IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| $164,705.00 UNITED STATES CURRENCY, ) | |
| $19,000.00 UNITED STATES CURRENCY, ) | Case No. 3:04-cv-00270 |
| and $4,300.00 UNITED STATES CURRENCY, ) | Judge Trauger/Brown |
| ) | |
| Defendants. ) | |
| ) | |
| KENNETH LAMONT CRUTCHER, ) | |
| ) | |
| Claimant. ) | |

To: The Honorable Aleta A. Trauger, District Judge

**REPORT AND RECOMMENDATION**

The parties have filed Motions for Summary Judgment with accompanying memoranda. (Docket Entries 151, 152, 157). Both parties have filed Responses[1] and Replies. (Docket Entries 174, 177, 179, 180). The Government also filed a Statement of Facts, and Claimant's response is attached to the Government's Reply. (Docket Entries 156, 179-1). Claimant did not file a Statement of Facts. For the reasons set forth below, the Magistrate Judge **RECOMMENDS** both Motions for Summary Judgment be **DENIED**.

---

[1] The Government erroneously styled its Response as a Reply. (Docket Entry 174).

1

# I. PROCEDURAL HISTORY

The procedural history of this action is long and complicated. In a recent Order, the Sixth Circuit provided a concise overview of the case:

> In 2006, a jury convicted Crutcher of conspiring to distribute marijuana and cocaine, possessing with intent to distribute cocaine, possessing firearms in furtherance of drug trafficking, and being a felon in possession of firearms. The jury also returned a special verdict form against him as to one count of forfeiture. The district court sentenced him to life in prison, pursuant to 21 U.S.C. §§ 841(b)(1)(A) and 851. A panel of this court affirmed Crutcher's convictions and sentence on appeal. *United States v. Ogburn*, 288 F. App'x 226 (6th Cir. 2008), *cert. denied*, 129 S. Ct. 1650 (2009).
>
> Subsequently, Crutcher filed a motion for the return of property, pursuant to Federal Rule of Criminal Procedure 41(g), seeking the return of cash, four firearms, various documents, cell phones, and a box of rubber bands. The district court denied the motion as to the cash and firearms on the ground that those items were forfeited pursuant to the special verdict form because they were possessed in violation of federal law, but granted it as to the other miscellaneous items. The district court also reopened the civil forfeiture proceedings relating to the cash and firearms. On appeal, a panel of this court affirmed the district court's judgment. *United States v. Crutcher*, No. 09-6343 (6th Cir. Oct. 13, 2010).
>
> In April 2010, Crutcher filed a motion for an order of distribution, seeking the return of the currency that was seized from him. On May 5, 2010, the district court denied the motion because the issue of Crutcher's right to the forfeited currency was being litigated in a civil forfeiture case, not the criminal case; the district court also directed the parties to file any future pleadings concerning the forfeiture in the civil case. The district court denied Crutcher's motion for reconsideration.
>
> On appeal, Crutcher argued that the district court erred in denying the return of his property and that permitting the government to retain his property violated his rights against "double jeopardy." He also argued that the denial was improper because the government failed to properly obtain a pre-trial order permitting the retention of his property. We affirmed the district court's order.

*United States v. Crutcher*, No. 10-5867 (6th Cir. June 22, 2011).

II. UNDISPUTED FACTS[2]

On October 27, 2003, law enforcement officers seized the disputed United States Currency ("the defendant currency") from Claimant Kenneth Lamont Crutcher's ("Crutcher") vehicle and residence. When Crutcher was arrested at approximately 8 a.m., police found $164,705 United States currency in his vehicle in a plastic bag on the second seat behind and in Crutcher's reach. The currency was bundled and wrapped with rubber bands and sorted by denomination. Officer Clark read Crutcher his Miranda rights. Crutcher was taken to the DEA office, where Task Force Officer ("TFO") Marti Roberts advised him of his Miranda rights, and Crutcher initialed his rights.

A search warrant for Crutcher's house was executed on October 27, 2003, and officers found two loaded handguns, a loaded shotgun. Officers also found and seized $19,000.00 and $4,300 in United States currency, bundled and wrapped with rubber bands and sorted by denominations, respectively from a chest drawer and from under a couch in the master bedroom located at the Crutcher residence. In the master bedroom, law enforcement also found a safe with 53.2 grams of marijuana in it. Crutcher resided at 3106 Vailview Drive, Nashville, TN 37206 from November 1, 2002 through October 27, 2003, with his wife Kim Crutcher, sons Korey and Kenneth Crutcher and daughter Kelli Crutcher.

As part of the criminal action, Judge Echols held a suppression hearing on September 23, 2004. Metropolitan Nashville Police Department ("MNPD") Officer Mike Clark, DEA TFO

---

[2] The facts are primarily taken from the Government's Statement of Undisputed Facts and Claimant's Responses. (Docket Entries 156, 177, 179-1).

Marti Roberts, DEA Agent Matt Bradford, and Crutcher testified regarding whether Crutcher cooperated with and made statements to law enforcement on October 27, 2003. Officer Roberts testified that Crutcher cooperated by providing the following summarized information in front of TBI Agent Smitherman:

> Crutcher met Miguel through a friend of his by the name of Newman. Crutcher identified the photograph of Miguel Hernandez as Miguel. Miguel was Newman's source of supply for cocaine. Crutcher began to purchase kilogram quantities of cocaine through Mr. Newman from Miguel Hernandez. Miguel owned a business on Nolensville Road, Nashville, TN called Califas Auto Repair. Eventually Crutcher and Miguel cut Newman out and Crutcher dealt directly with Miguel to purchase kilogram quantities of cocaine. Crutcher met "Shorty" through Miguel. Crutcher identified a photograph of Andrez Miranda as "Short[y]." Miguel told Crutcher that Miguel got his cocaine from Miranda. The money in the car was intended for Miguel or his folks because Crutcher had purchased maybe three or more kilograms of cocaine a week prior to Crutcher's arrest. The money in the car was to go to Ulysses Hernandez (an associate of Miguel).
>
> Crutcher was normally fronted kilogram quantities of cocaine through Newman and eventually from Miguel and Miranda.

Crutcher claims he had saved the defendant currency over a two-and-one-half year period. Crutcher relies upon tax returns and miscellaneous papers, including monthly bank statements from Bank of America for his business account and his wife's account and federal tax returns for tax years 2000 through 2003. He also claims he had income from gambling and buying and selling cars, equipment, and appliances. Attorney E.T. Kindall provided Crutcher's financial records to the United States. Crutcher provided copies of his 2001, 2002, and 2003 federal tax returns.

At his initial appearance in the criminal action on October 27, 2003, Crutcher denied having any money in the bank or cash on hand and stated he averaged a take home income from

his business of about $3,300 per month. He listed his assets as two vehicles and a house, with $3,000 per month income and monthly bills as $530 toward the house payment and $500 toward a truck payment.

Crutcher last worked at "C & C Auto Upholstrey [sic] and Detail," located at 2901 12th Avenue South, Nashville, TN, a location rented by Crutcher for an auto detailing business. The only bank records for C & C Auto show a beginning balance in January 2003 of $1,912.40 and an ending balance of $3,475.55 on October 31, 2003. Crutcher estimated his monthly expenses, totaling $3800 per month, and did not include expenses to pay employees or a salary for himself. For tax year 2000, Crutcher filed an S Corporation return reflecting that C & C had gross receipts of $71,136, but after expenses were deducted, with no deduction for employee salaries, the ordinary income for the business was $1,726.

Crutcher and his wife's joint federal tax return for tax year 2001 reflected that the adjusted gross income for Crutcher and his wife was $24,533, with Kim Crutcher earning $19,997 in wages and Crutcher's business income as $4,881 after payment of $39,417 in expenses and with no expenses taken to pay employees and no taxable interest declared. For tax year 2002, the joint federal tax return reflected that the adjusted gross income for the Crutchers was $38,571, with Kim Crutcher earning $21,533 of that in wages and Crutcher's business income as $15,312 after payment of $49,034 in expenses with no expenses to pay employees. For tax year 2003, the Crutchers had an adjusted gross income of $51,511, with Kim Crutcher earning $22,171 in wages and Crutcher's business income as $28,380 after payment of $53,425 in expenses with no expenses to pay employees. Kim Crutcher was not involved in Crutcher's

finances and did not know how much money he made from his business. Kim Crutcher's salary was directly deposited in the checking account.

Beginning in 2002, Crutcher's tax returns refer to five Bank of America interest bearing items. All were opened in 2002 or early 2003 and were still accruing interest as of October 31, 2003. The total of the five accounts was approximately $100,000.

With respect to Kenneth and Kim Crutcher's personal checking account, Bank of America records reflect that on January 8, 2003, the account had a balance of $1,698.23. On July 8, 2003, the account had an ending balance of $69.75, with two overdraft fees. On August 6, 2003, the account had an ending balance of $54.11, with one overdraft fee. On September 5, 2003, the account had an ending balance of $448.97, with one overdraft fee. On October 7, 2003, the account had an ending balance of $917.50, with five overdraft fees. According to the November 3, 2003 statement, the daily balance on October 24, 2003 was negative $377.08, with six overdraft fees prior to October 24, 2003. A savings account belonging to both Kim and Kenneth Crutcher had an average balance of $1069.24 on October 31, 2003 with no significant withdrawals or deposits during 2003. Bank of America records reflect loan payments toward a 5-year installment loan for which Kim Crutcher financed $30,000 to buy a Ford Expedition.

In a memorandum decision,[3] Judge Echols credited Officer Clark's testimony that Crutcher told Officer Clark that he wanted to cooperate, including completing the delivery of the money to Miguel Hernandez ("Hernandez"). Judge Echols also credited the testimony of Agent Roberts that Crutcher agreed to cooperate and in fact cooperated by providing information in the interview consistent with his admitted conduct of identifying and initialing photographs of

---

[3] This decision is docket entry 496 in Crutcher's criminal case, 3:03-cr-00205.

Hernandez and Andrez Miranda ("Miranda"). He found that Crutcher admitted he identified photographs of co-defendants Hernandez and Miranda and initialed the photographs to indicate his identification of them during the interview. He also found that Crutcher cooperated with the authorities.

Crutcher has prior felony convictions in 1986 in Davidson County Court Case number 86S768 for assault/attempted voluntary manslaughter, and in 1994 in Davidson County Court number 92-D-2318, for two counts of selling over 26 grams of cocaine, one count of possession with intent to sell over 300 grams of cocaine, one count of conspiracy to possess with intent to sell over 300 grams of cocaine, and one count of felony possession of marijuana. Crutcher was in prison from 1994 to 1998.

Crutcher was convicted of an illegal narcotics trafficking conspiracy to distribute marijuana and five kilograms or more of cocaine from on or about November 1, 2002 to on or about October 27, 2003 with Hernandez, Ulysses Espinosa ("Espinosa"), and Miranda. Crutcher and Miranda were convicted of possession with the intent to distribute 500 grams or more of cocaine on August 15, 2003, August 21, 2003, and September 10, 2003.

Crutcher, a convicted felon, was convicted of possessing a Maverick Model 88 12-gauge shotgun, a Smith and Wesson Model 659 pistol, a Taurus PT111 IVC 9mm pistol, and a Smith and Wesson .38 caliber pistol on October 27, 2003 in furtherance of the distribution and possession with intent to distribute cocaine and marijuana.

In the criminal action, Hernandez was convicted of the conspiracy by arranging for the delivery of two kilograms of cocaine from Miranda on July 28, 2003. Espinoza was convicted of possession with intent to distribute more than 500 grams of cocaine; on August 6, 2003, he

received approximately four kilograms of cocaine from Miranda's runner, which Espinoza delivered to Crutcher, receiving $51,380 in cash which was confiscated by police later the same day. Miranda was convicted of the conspiracy and of possessing a firearm in furtherance of the possession of cocaine with intent to distribute; he distributed kilogram quantities of cocaine to Crutcher.

Judge Echols found that wiretap recorded drug transactions established that Crutcher had been involved in drug transactions in the minimal amount of 55 kilograms of cocaine. Agent Bradford listened to and transcribed numerous phone calls between persons he identified as Crutcher and Miranda in July through September 2003. These conversations detailed several cocaine transactions.

Crutcher's conviction in the criminal case was affirmed by the Sixth Circuit Court of Appeals. *United States v. Ogburn and Crutcher*, 288 Fed. App'x 226, *4 (6th Cir. 2008). The Court found that Crutcher was arrested on October 27, 2003, and officers discovered a bag containing $164,705 in cash in his vehicle, which Crutcher said he was taking to "Hernandez's people." *Id*.

## II. LEGAL DISCUSSION

On July 28, 2010, Judge Trauger denied a similar Motion for Summary Judgment filed by the Government. (Docket Entries 77, 78). The Government's underlying argument does not substantially differ legally from its prior Motion for Summary Judgment, and the Magistrate Judge cites to Judge Trauger's Order where appropriate.

**A. Standard of Review**

Summary judgment is appropriate if there is "no genuine dispute as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The main inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After sufficient time for discovery and upon motion, Fed. R. Civ. P. 56(c) mandates summary judgment against a party who fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

When deciding a motion for summary judgment, the court must review the evidence and draw all reasonable inferences in favor of the non-moving party. *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006). In order to survive summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250; Fed. R. Civ. P. 56(e). Thus, even if the nonmovant produces some evidence, the production will not be sufficient to defeat summary judgment so long as no reasonable jury could reach a finding on that issue in favor of the non-moving party. *Anderson*, 477 U.S. at 248. In other words, the nonmovant must produce supporting factual evidence that is not "so conclusively contradicted by the record that no reasonable jury could believe it." *Chappell v. City of Cleveland*, 585 F.3d 901, 906 (6th Cir. 2009). The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive summary judgment rather, there must be evidence on which the jury could reasonable find for the nonmoving party. *Anderson*, 477 at 252.

### B. Civil Forfeiture

Pursuant to 21 U.S.C. § 881(a)(6), the following property is subject to forfeiture by the United States:

> All moneys, negotiable instruments, securities or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.

Because the Government's theory is that the defendant currency was used "to commit or facilitate the commission of a criminal office, or was involved in the commission of a criminal offense," the Government must "establish that there was a substantial connection between the property and the offense." 18 U.S.C. § 983(c)(3). The Government must also prove that the property is subject to forfeiture by a preponderance of the evidence. 18 U.S.C. § 983(c)(1). This means that the Government must show that it is more likely than not that there was a substantial connection between the defendant currency and the criminal violation.

### C. Analysis

**1. The Government's Motion**

In many respects, The Government's Motion is a restatement of its previous Motion for Summary Judgment using a different basis, Judge Echols's findings in the suppression hearing. The Government also relies on Crutcher's responses to financial interrogatories.

With respect to the suppression hearing, the Government argues that Judge Echols found that Crutcher cooperated with law enforcement after his arrest and that he offered to deliver the $164,705 to complete a drug deal, which precludes Crutcher from claiming innocent ownership of the $164,705 pursuant to 18 U.S.C. §983(d). The Government argues that collateral estoppel,

or issue preclusion, applies to Crutcher's offer of cooperation. The Magistrate Judge disagrees, however.

The Government previously argued that Crutcher's criminal conviction, including the special verdict, precluded Crutcher's innocent owner claim in the civil forfeiture matter. Judge Trauger rejected this argument, finding that the jury made no specific finding that Crutcher intended to use the defendant currency to buy drugs or that the defendant currency was specifically tied to his illegal drug activities. Judge Trauger also rejected the Government's argument that the officers' trial testimony that Crutcher admitted he intended to use the defendant currency to buy drugs, finding that a genuine issue of material fact existed as to whether there was a substantial connection between Crutcher's criminal violations and the defendant currency.

In order for collateral estoppel to preclude redetermination of an issue, five requirements must be met:

1. the issue in the subsequent litigation is identical to that resolved in the earlier litigation;
2. the issue was actually litigated and decided in the prior action;
3. the resolution of the issue was necessary and essential to a judgment on the merits in the prior litigation;
4. the party to be estopped was a party to the prior litigation (or in privity with such a party); and
5. the party to be estopped had a full and fair opportunity to litigate the issue.

*Hammer v. INS*, 195 F.3d 836, 840 (6th Cir. 1999). In the suppression order, Judge Echols found that the currency obtained from Crutcher's car should not be suppressed because exigent circumstances existed for the search. (Docket Entry 152-1, pp. 29-31). With regard to Crutcher's statements to law enforcement shortly after his arrest, Judge Echols credited the statements of

11

the arresting officers and found that Crutcher validly waived his Sixth Amendment rights during questioning. (Docket Entry 152-1, pp. 33-43).

The Magistrate Judge does not believe the suppression order creates no genuine issue of material fact to preclude Crutcher's innocent owner claim. Putting aside the fact that the probable cause standard of an evidence suppression hearing is hardly equivalent to the preponderance of the evidence standard here,[4] the relation of the defendant currency obtained from Crutcher's vehicle to his criminal activity was not established by Judge Echols's order and was not even at issue. Crutcher apparently sought only to have the defendant currency and his statements to arresting officers suppressed at trial. For the same reasons Judge Trauger rejected the Government's reliance on the jury verdict as collateral estoppel to Crutcher's innocent owner defense, the Magistrate Judge believes Judge Echols's order cannot be used for collateral estoppel purposes.

The Government also argues that Crutcher's responses to interrogatories related to his finances show by a preponderance of the evidence, with no genuine issue of material fact, that the defendant currency must be subject to forfeiture.[5] The Magistrate Judge is unconvinced by this argument. Crutcher alleges that the defendant currency is the product of his business,

---

[4] *See Maryland v. Pringle*, 540 U.S. 366, 371 (2003) ("The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances.... Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence ... have no place in the probable-cause decision.").

[5] This is, in fact, the only argument the Government makes with respect to the defendant currency found in Crutcher's residence, as that currency was not mentioned in Judge Echols's order.

gambling, and dealing in merchandise.[6] While this is somewhat far-fetched, particularly with respect to the $164,705 found in his vehicle, the Magistrate Judge believes Crutcher's responses raise more factual issues than they resolve, and the dispute will be best resolved at trial. The Magistrate Judge therefore recommends the Government's Motion for Summary Judgment be denied.

**2. Crutcher's Motion**

Crutcher has also moved for summary judgment, arguing that his right to privacy under the Fourth Amendment was violated, that the Government failed to meet the minimum filing requirements for a civil forfeiture, that no evidence exists to establish a connection between the defendant currency and Crutcher's unlawful drug transactions, and that the Government waived its opportunity to argue that the defendant currency constituted proceeds of unlawful drug transactions at Crutcher's criminal trial and should therefore be estopped from bringing a civil forfeiture. For the reasons set forth below, the Magistrate Judge believes this Motion should be denied.[7]

Crutcher's first argument is essentially a restatement of the issues he raised in the suppression hearing in his criminal case. It is clear that the validity of the search and seizure of the $164,705 has already been established by Judge Echols, and collateral estoppel applies. *See Hammer*, 195 F.3d at 840. However, Judge Trauger noted in her Order that Crutcher was

---

[6] Of course, if Crutcher prevails, his failure to reveal these funds on his relevant tax returns is, to say the least, problematic.

[7] As noted by the Government, Crutcher's argument is primarily an argument that the Government has failed to state a claim under Fed. R. Civ. P. 12(b)(6). The Magistrate Judge believes that this Motion should be denied under either the motion to dismiss or the motion for summary judgment standard.

allowed to challenge the seizure under new precedent, *Arizona v. Gant*, 557 U.S. 332 (2009). (Docket Entry 77, p. 8). At the time of Judge Trauger's Order, the retroactive application of *Gant* was pending before the Sixth Circuit in *United States v. Buford*, 632 F.3d 264 (6th Cir. 2011). The Sixth Circuit held that "[a] police officer who reasonably relies on settled circuit precedent that authorizes the search of a vehicle acts in objective good faith." *Id.* at 276-77. Therefore, regardless of the validity of the search under *Gant*, the Magistrate Judge believes the search was conducted in good faith in reliance on established Sixth Circuit precedent, as found by Judge Echols, and the $164,705 should not be suppressed in this civil forfeiture action.

Crutcher next argues that the Government's complaint is insufficient due to its use of "boilerplate language" in light of the more stringent pleading requirements for civil forfeiture proceedings. The Government argues that the sworn Affidavit provided by DEA TFO Marti Roberts clearly provides sufficient facts to provide a reasonable belief that the defendant currency is subject to forfeiture. (Docket Entry 1). *See* Fed. R. Civ. P. Supp. R. G(2)(f) (providing that the complaint must "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial."). Officer Roberts's Affidavit, attached to the Complaint, meets this standard by providing details of the arrest, search, and seizure of the defendant currency that provide a reasonable belief that the Government will establish the connection between the defendant currency and Crutcher's criminal activity by a preponderance of the evidence at trial.

In a related argument, Crutcher states that the Government has shown no evidence to establish a connection between the defendant currency and Crutcher's unlawful drug transactions. For the same reasons that the Magistrate Judge believes the Government is not

entitled to summary judgment in this matter, Crutcher is not entitled, either. A genuine issue of material fact exists as to whether the defendant currency was related to Crutcher's criminal activity. Therefore, the Magistrate Judge believes Crutcher is not entitled to summary judgment on this point.

Crutcher's final argument, that the Government should be estopped from bringing a civil forfeiture matter, was considered and rejected in Judge Trauger's July 28, 2010 Order. (Docket Entry 77, pp. 7-8).

### III.  CONCLUSION

For the reasons stated above, the undersigned **RECOMMENDS** that **both** Motions for Summary Judgment be **DENIED**.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days from receipt of this Report and Recommendation within which to file with the District Court any written objections to the proposed findings and recommendations made herein.  Any party opposing shall have fourteen (14) days from receipt of any objections filed regarding this Report within which to file a response to said objections.  Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation may constitute a waiver of further appeal of this Recommendation.  *Thomas v. Arn*, 474 U.S. 140, *reh'g denied*, 474 U.S. 1111 (1986).

ENTERED this 28th   day of September, 2011.

/S/ Joe B. Brown
Joe B. Brown
United States Magistrate Judge